IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| OREGON AERO INC., <br><br> Plaintiff, <br> v. <br><br> NAVIGATORS INSURANCE COMPANY, <br><br> Defendant. | Case No.: 3:21-cv-01178-AN <br><br><br> OPINION AND ORDER |

Plaintiff Oregon Aero, Inc. brings this action against defendant Navigators Insurance Company alleging negligence *per se*. Defendant now moves for summary judgment. The Court held oral argument on March 10, 2025. For the reasons that follow, the motion is DENIED.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that there is no genuine issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). "Material facts are those which might affect the outcome of the suit." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Materiality is determined using substantive law. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When the moving party demonstrates the absence of a genuine dispute as to any material fact, the nonmoving party that bears the burden at trial must show in response that there is evidence creating a genuine dispute as to any material fact. *Rivera*, 395 F.3d at 1146 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986)). The court must view the evidence "in the light most favorable to the non-moving party" and draw all reasonable inferences in its favor. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010) (citing *Anderson*, 477 U.S. at 252). "Credibility determinations, the weighing of the evidence, and

1

the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Anderson*, 477 U.S. at 255.

## BACKGROUND

**A.     The Policy**

Defendant issued an insurance policy (the "Policy") to plaintiff which covered the period of June 1, 2018, to June 1, 2019. First Am. Compl. ("FAC"), ECF [25], ¶ 6; Decl. of Francis J. Maloney III ("Maloney Decl."), ECF [44], ¶ 5 & Ex. D ("Policy") at 1, 3. As relevant to this action, the Policy includes "Crime Coverage" specifying that defendant will pay plaintiff for "loss of or loss from damage to . . . Money, Securities and Other Property directly caused by Theft or Forgery committed by an Employee, whether identified or not, acting alone or in collusion with other persons." Policy 5 (bolding omitted).

The Policy defines theft as "the intentional unlawful taking of Money or Securities to the Insured's deprivation." *Id.* at 17 (bolding omitted). The Policy defines forgery as "the signing of the name of another person or organization, other than the signatory, with a handwritten signature physically affixed to a Covered Instrument or Covered Personal Instrument, without authority and with the intent to deceive." *Id.* at 13 (bolding omitted). The Policy defines an employee as "any natural person . . . while in the Insured's service or for 60 days after termination of service, unless such termination is due to Theft or Forgery or any other dishonest act committed by the Employee; . . . who the Insured compensates directly by salary, wages or commission; and . . . who the Insured has the right to direct and control while performing services for the Insured[.]" *Id.* at 11-12 (bolding omitted). The definition of employee also includes "any attorney retained by the Insured, and any employee of such attorney, while performing legal services for the Insured." *Id.* at 12 (bolding omitted).

The Crime Coverage contains numerous exclusions. As relevant to this action:

"B. This Crime Policy will not apply to
. . .

3. damages of any type, except the Insured's direct compensatory damages resulting from a loss covered under this Crime Policy.

2

> 4. indirect or consequential loss of any nature including fines, penalties, multiple or punitive damages.
> . . .
> 10. loss resulting directly or indirectly from the giving or surrendering of Money, Securities or Other Property in any exchange or purchase, whether or not fraudulent, with any other party not in collusion with an Employee, except when covered under Insuring Agreement E."

*Id.* at 18-20 (bolding omitted).

Under the terms of the Policy, plaintiff must bring any legal action against defendant involving an alleged loss within two years from the date the insured discovers the loss. *Id.* at 27.

**B.  The Claim and Procedural History**

Plaintiff alleges that during the policy period it discovered that an attorney it had hired, Chris James, had stolen no less than $3,379,598.29 by unlawfully taking plaintiff's money, fraudulently obtaining loans in its name, and disbursing those loans to himself, the James Law Group, LLC, or third parties. FAC ¶¶ 10-13.

Plaintiff made a claim to defendant for the loss on November 26, 2018. *Id.* ¶ 34; *see* Maloney Decl. ¶ 6 & Ex. E ("Proof of Loss") at 1. The Proof of Loss states that the loss occurred between January 1, 2010 to November 2018 and was discovered in May 2018. Proof of Loss 1. It further explains that James and the James Law Group submitted fraudulent billing records to demand payment for unearned fees; diverted success fees to themselves; and secured loans ostensibly for plaintiff, then disbursed the funds to themselves. *Id.* at 2-3.

Defendant began an investigation but did not issue a decision. Plaintiff filed a claim for breach of contract in Multnomah County Circuit Court on August 27, 2020, alleging that defendant had failed to pay the amount owed under the Policy for the alleged loss. Maloney Decl. ¶ 2 & Ex. A. Plaintiff did not file suit before that date because it "relied on Navigators to reasonably investigate and pay the [c]laim[] . . . [and] because Navigators was continuing to investigate the [c]laim and had not denied coverage for it." Decl. of Michael Dennis ("Dennis Decl."), ECF [49], ¶ 5. The parties entered into a tolling agreement pending defendant's investigation and the complaint was dismissed on June 10, 2021. Maloney Decl. ¶ 3 & Ex. B.

Defendant denied the insurance claim on June 21, 2021, on multiple bases. *See* FAC ¶ 15; Maloney Decl. ¶ 7 & Ex. F ("Denial Letter"). Defendant did not consider the payments to be "Employee Theft" as defined in the Policy because it lacked evidence demonstrating disbursement of loan payments to James and found that plaintiff habitually paid James without supporting invoices and was aware of certain loans at issue. *Id.* at 2-6. Defendant found that plaintiff had breached the provision of the Policy that required plaintiff, as the insured party, to maintain proper records. *Id.* at 11-12. It also found that plaintiff had discovered the alleged theft "as early as 2012 or 2013" but failed to take legal action within two years, in breach of the Policy. *Id.* at 14. Finally, it determined that the Policy did not cover indirect losses incurred as a result of liability to third parties, such as the loan repayments at issue in the claim. *Id.* at 15-16.

Plaintiff filed a second lawsuit after the denial. That case was removed from Multnomah County Circuit Court on August 11, 2021. Notice of Removal, ECF [1], ¶ 1 & Ex. 2. The original complaint had two claims for breach of contract. *See id.* at Ex. 2. Defendant moved for summary judgment on those claims because the lawsuit was filed after the two-year period for legal recovery permitted in the Policy. Def. 1st Mot. for Summ. J., ECF [8]. Plaintiff moved to file an amended complaint to add a claim for negligence *per se* based on a legal theory then recently addressed by the Oregon Court of Appeals. Mot. for Leave to Amend, ECF [12] (discussing validity of claim in light of *Moody v. Or. Cmty. Credit Union*, 317 Or. App. 233, 505 P.3d 1047 (2022), *aff'd*, 371 Or. 772, 781 (2023)). Judge Mosman granted the motion for summary judgment and the motion for leave to amend the complaint. Mins. of Proceedings of June 21, 2022, ECF [24].

Plaintiff subsequently filed the First Amended Complaint, alleging two claims for breach of contract and one claim for negligence *per se*. The parties agree that after Judge Mosman's ruling on the prior motion for summary judgment, only the negligence *per se* claim remains. That claim is lengthy. In summary, it alleges that defendant negligently failed to complete its investigation into the insurance claim in a timely manner, delayed for an unreasonably long time, and therefore caused plaintiff to file a legal action for its alleged loss after the two-year period. FAC ¶¶ 34-47. Plaintiff alleges that defendant's negligent conduct in the insurance investigation violated provisions of Oregon Revised Statutes ("ORS")

4

§ 746.230, which governs unfair insurance claim settlement practices. *Id.* ¶¶ 48-55. "As a foreseeable and direct consequence of Navigators' violations of ORS 746.230," plaintiff alleges,

> "Oregon Aero has sustained, and continues to sustain, substantial actual damages, consequential damages, and out-of-pocket expenses, including, but not limited to, damages in the amount of coverage owed under the Policy, for which Navigators would have been liable on Oregon Aero's breach of contract claim but for the Court's ruling on Navigators' Motion for Summary Judgment; interest and late fees on loans that Oregon Aero has been unable to pay due to Navigators' delay and unreasonable denial, including, but not limited to, the loans Mr. James fraudulently obtained; and lost profits. These damages total an amount to be determined at trial, but not less than $3,259,771.50."

*Id.* ¶ 57.

On October 12, 2022, Judge Mosman stayed this case pending the Oregon Supreme Court's review of *Moody*. Order of October 12, 2022, ECF [32]. That stay remained in effect until January 17, 2024, after *Moody* was decided. Order of January 17, 2024, ECF [39]; *see Moody v. Or. Cmty. Credit Union*, 371 Or. 772, 781 (2023). Defendant filed the instant motion for summary judgment on June 30, 2024.

## DISCUSSION

The parties disagree on whether the Oregon Supreme Court's decision in *Moody* permits plaintiff to bring a claim for negligence *per se* in this case. Defendant contends that *Moody* should be read narrowly, arguing that it "only allows emotional distress damages under very narrow circumstances and does not provide a [p]laintiff corporation with a cognizable claim for recovery of consequential economic damages in a commercial claim[.]" Def. 2d Mot. for Summ. J. ("MSJ"), ECF [43], at 3-4. Plaintiff maintains that *Moody* should be read more broadly to permit negligence actions for violations of the standards of care set forth in ORS § 746.230. Pl. Resp. ("Resp."), ECF [48], at 1-2.

A.   **Applicable Law**

  1.   *Negligence*

Federal courts sitting in diversity must apply state substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 80 (1938). Under Oregon law, a plaintiff alleging negligence must show "that the defendant's conduct created a foreseeable and unreasonable risk of legally cognizable harm to the plaintiff

5

and that the conduct in fact caused that kind of harm to the plaintiff." *Sloan v. Providence Health Sys.-Or.*, 364 Or. 635, 643, 437 P.3d 1097 (2019); *see Fazzolari v. Portland Sch. Dist. No. 1J*, 303 Or. 1, 17, 734 P.2d 1326 (1987) ("In short, unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff.")).

This standard can be boiled down to distinct elements. To state a claim for negligence, a plaintiff is required to:

> "allege facts from which a factfinder could determine (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent."

*Solberg v. Johnson*, 306 Or. 484, 490–91, 760 P.2d 867, 870 (1988), *abrogated by Deckard v. Bunch*, 358 Or. 754, 370 P.3d 478 (2016). "Foreseeability is a prediction of the risk that an act or omission will result in a particular kind of harm—it turns on 'what *prospectively might* happen.'" *Towe v. Sacagawea, Inc.*, 357 Or. 74, 87, 347 P.3d 766 (2015) (emphasis in original) (quoting *Fazzolari*, 303 Or. at 13). "Causation is an assessment of whether a particular act or omission in fact resulted in the particular harm that a plaintiff suffered—it turns on 'what *retrospectively did* happen.'" *Id.* (emphasis in original) (quoting *Fazzolari*, 303 Or. at 13). In a negligence action, a plaintiff "must also prove an actual causal link between the defendant's conduct and the plaintiff's harm—that is, the plaintiff must prove 'cause in fact.'" *Id.* (quoting *Or. Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or. 329, 340, 83 P.3d 322 (2004)).

When a plaintiff alleges purely economic harms, they must "'show some source of duty outside the common law of negligence, such as a special relationship or status that imposed a duty on the defendant beyond the common-law negligence standard.'" *Benson Tower Condo. Owners Ass'n v. Victaulic Co.*, No. 3:13-cv-01010-SI, 2014 WL 5285475, at *3 (D. Or. Oct. 15, 2014) (quoting *Harris v. Suniga*, 344 Or. 301, 308, 180 P.3d 12 (2008)). In showing a source of duty, "an independent standard of care may arise

6

out of a special relationship between the contracting parties, [and] it also may be expressed in a statute or administrative rule." *Moody*, 371 Or. at 777 (citation and footnote omitted).

    2. *Negligence Per Se*

"[A] negligence *per se* claim is not a separate type of negligence claim with its own elements; rather, negligence per se is 'simply shorthand for a negligence claim in which the standard of care is expressed by a statute or rule.'" *Id.* at 781. "When a negligence claim otherwise exists, and a statute or rule defines the standard of care expected of a reasonably prudent person under the circumstances, a violation of that statute or rule establishes a presumption of negligence." *Deckard*, 358 Or. at 761 n.6. Accordingly, a plaintiff alleging negligence *per se* must demonstrate that a negligence claim exists and that a statute or rule sets the standard of care.

**B.     Whether Plaintiff's Negligence *Per Se* Claim is Viable**

Historically, Oregon has been "among the jurisdictions that do not recognize tort claims for bad-faith denial of insurance benefits[.]" *Moody*, 371 Or. at 807 (Garrett, J., dissenting). Prior to *Moody*, the Oregon Supreme Court considered a claim for emotional distress damages allegedly caused by an insurance coverage denial. *See Farris v. U.S. Fid. & Guar. Co.* ("*Farris II*"), 284 Or. 453, 455, 587 P.2d 1015 (1978) (en banc). In that case, the court determined that the plaintiffs had brought a claim for breach of contract and ruled that it was not possible to recover emotional distress damages on a breach of contract claim. *Id.* at 456 (citation omitted). The court noted that "[i]t is possible to contend that defendant's violation of the statute is a tort, and, therefore, plaintiffs are entitled to recovery for emotional distress as well as for their other damages." *Id.* at 458. Based on its reading of ORS § 746.230, however, the court did not find any evidence that "the legislature intended . . . that actions for breach of insurance contracts would be transformed, in all of the covered instances, into tort actions with a resulting change in the measure of damages. The statutes express no public policy which would promote damages for emotional distress." *Id.* Following *Farris II*, "it became well-established law in Oregon that insureds could not bring a tort cause of action based on an insurer's violation of ORS 746.230." *Liquid Agents Healthcare, LLC v. Evanston Ins. Co.*, No. 1:20-cv-02225-CL, 2024 WL 4874288, at *3 (D. Or. Oct. 30, 2024) (citations omitted).

7

The Oregon Supreme Court subsequently explained that "an insurer may be liable to its insured in tort when the insurer is subject to a standard of care that exists independent of the contract and without reference to the specific terms of the contract, such as when the insurer undertakes the duty to defend, thereby creating a special relationship with concomitant duties." *Foraker v. USAA Cas. Ins. Co.*, No. 3:14-cv-87-SI, 2017 WL 3184716, at *5 (D. Or. July 26, 2017) (citing *Georgetown Realty, Inc. v. Home Ins. Co.*, 313 Or. 97, 110, 831 P.2d 7 (1992) (en banc)). It did not yet, however, state that ORS § 746.230 created a standard of care resulting in insurer lability. For example, the court found that, where a plaintiff had contracted with a builder to build their house, and the homeowner later discovered water damage caused by the builder's error, the plaintiff could bring negligence claims alongside contract claims premised on the common law standard of care. *Abraham v. T. Henry Constr., Inc.*, 350 Or. 29, 33, 43, 249 P.3d 534 (2011).

In *Moody*, the plaintiff beneficiary brought a negligence *per se* claim against the defendant life insurer for negligently failing to investigate and pay a policy benefit claim, allegedly causing the plaintiff to suffer emotional distress damages. The trial court granted the defendant's motion to dismiss, but the appellate court reversed. The Oregon Supreme Court sided with the appellate court and held that the plaintiff could bring a negligence *per se* claim for emotional distress damages. Much of the analysis in *Moody* relates specifically to whether the plaintiff had a legally protected interest sufficient to render the defendant liable for emotional distress damages. However, the opinion is instructive as to how courts should treat negligence *per se* claims that do not involve emotional distress damages.

The Oregon Supreme Court, noting that *Farris II* involved a contract claim, first determined that "*Farris II* does not bar our consideration of the viability of plaintiff's alleged common-law negligence claim." *Moody*, 371 Or. at 796. Then, examining ORS § 746.230, the court observed that the statute "proscribes [] conduct that is independent of the obligation to pay benefits due under the insurance policy[,]" which "suggest[s] that the harm that the legislature sought to prevent was not limited to the financial harm that occurs when insurance benefits are not paid." *Id.* at 798-99. In addition, "the statute provides explicit notice to insurers of the conduct that is required and, in requiring insurers to conduct reasonable investigations and to settle claims when liability becomes reasonably clear, does so in terms that

8

are consistent with the standard of care applicable in common law negligence cases." *Id.* at 799. The court concluded that "permitting a common-law negligence claim" could act as a deterrent that would supplement existing remedies. *Id.* at 799-800. Given the facts presented by the parties in *Moody*, the court determined that the parties, as insured and insurer, were "in a relationship of 'mutual expectation of service and reliance'" and that "the services that defendant undertook to provide are services that, absent the exercise of reasonable care, may foreseeably create a risk of emotional harm." *Id.* at 803 (citations omitted). The dissent in *Moody* is also instructive. Justice Garrett summarized *Moody* as overturning *Farris II* and holding that "an insurer's denial of coverage *can* support liability in tort" and lamented that it would "change[] the landscape of insurance litigation in Oregon." *Id.* at 807, 824 (Garrett, J., dissenting).

Defendant urges the Court to read *Moody* narrowly. It asserts that *Moody* "only allows emotional distress damages under very narrow circumstances and does not provide a [p]laintiff corporation with a cognizable claim for recovery of consequential economic damages in a commercial claim[.]" MSJ 3-4. It points out that *Moody* emphasizes that the "'mutual expectation[s] of service and reliance'" in the insurance agreement at issue in that case related specifically to the "peace of mind" offered by life insurance policies. *Id.* at 17 (quoting *Moody*, 371 Or. at 802). As a result, defendant maintains that *Moody* should be limited to life insurance policies or policies that are personal in nature and to emotional distress damages. *Id.* at 18-20.

Although defendant is correct that the facts of *Moody* are limited to emotional distress damages related to a life insurance policy, this Court must conclude based on the Oregon Supreme Court's analysis that other types of damages claims are now cognizable under a negligence *per se* theory based on the standard of care set forth in ORS § 746.230. The court determined that: (1) it could consider a common law negligence claim, and not just a contract claim, where a breach of insurance contract claim had also been alleged; (2) the legislature intended ORS § 746.230 regulate conduct and prevent harm beyond the failure to pay insurance benefits; (3) ORS § 746.230 gives insurers notice of the conduct required, including the obligation to conduct reasonable investigations "with the standard of care applicable in common law negligence cases"; (4) an insurer and an insured may be in a special relationship of "'mutual expectation of

9

service and reliance'"; and (5) these findings support permitting a negligence *per se* claim in an insurance dispute based on an alleged statutory, extracontractual obligation not to engage in unfair claims settlement practices. This Court's conclusion is in accord with a recent findings and recommendation issued in this district. *See Liquid Agents Healthcare, LLC*, 2024 WL 4874288, at *4 (finding that *Moody* did not bar a claim against a commercial insurer that alleged that the insurer "was negligent in four extracontractual ways, prohibited by ORS 746.230(1), which led to foreseeable economic damages").

C.      **Remaining Arguments**

    1.  *Causation*

In the alternative, defendant argues that plaintiff cannot establish causation as a matter of law. MSJ 12. It contends that plaintiff's alleged damages, which include the coverage under the Policy, interest and fees on loans, and lost profits, are the result of Judge Mosman's dismissal of the breach of contract claim, not defendant's conduct. *Id.* at 13. In its reply, defendant also asserts that plaintiff's losses were caused by "James and his various schemes." Def. Reply ("Reply"), ECF [53], at 14. Plaintiff contends that the damages are the result of defendant's violations of ORS § 746.230. Resp. 27-28.

To establish causation, "a plaintiff must demonstrate a reasonable probability that the alleged conduct caused the alleged harm." *Yeo v. Washington County*, No. 08-1317-AC, 2011 WL 1118506, at *9 (D. Or. Mar. 24, 2011) (citing *Joshi v. Providence Health Sys. of Or. Corp.*, 198 Or. App. 535, 545, 108 P.3d 1195 (2005), *aff'd*, 342 Or. 152, 149 P.3d 1164 (2006)). Oregon uses a "cause in fact" or "but for" test, "which 'generally requires evidence of a reasonable probability that, but for the defendant's negligence, the plaintiff would not have been harmed.'" *Cain v. Bovis Lend Lease, Inc.*, 817 F. Supp. 2d 1251, 1279 (D. Or. 2011) (quoting *Joshi*, 198 Or. App. at 538–39). An injury may have more than one cause. *See Haas v. Est. of Carter*, 370 Or. 742, 749, 525 P.3d 451 (2023) (emphasis in original) (citation omitted) ("To determine whether a defendant's negligence is *one of many* potential causes of a plaintiff's harm, courts commonly use what is referred to as a 'but-for' test."). It is not immediately clear based on the evidence available why plaintiff did not file this lawsuit while the investigation was still pending to avoid the two-year suit limitation. However, plaintiff raises a triable issue of fact regarding the causation of its

10

alleged harms—whether, but for the delay in the investigation, plaintiff would have suffered the economic damages resulting from the loss of a breach of contract claim, related interests and fees, and lost profits. Accordingly, there is a genuine dispute as to causation that precludes summary judgment.

        2. *Foreseeability*

Defendant asserts that the damages alleged are indirect and consequential damages that were unforeseeable. MSJ 21. "'A dispute in a negligence action about whether an injury was foreseeable generally presents an issue of fact and, therefore, is not a likely candidate for summary judgment.'" *Giulio v. BV CenterCal, LLC*, No. 3:09-CV-482-AC, 2011 WL 3860443, at *17 (D. Or. Aug. 10, 2011) (quoting *Cunningham v. Happy Palace, Inc.*, 157 Or. App. 334, 337, 970 P.2d 669 (1998)), *report and recommendation adopted*, No. CV 09-482-AC, 2011 WL 3860440 (D. Or. Aug. 31, 2011). "[S]ummary judgment is appropriate where 'no reasonable factfinder could find the risk of harm to be reasonably foreseeable.'" *Id.* (quoting *Cunningham*, 157 Or. App. at 337). Here, the parties dispute foreseeability and plaintiff argues that the damages it suffered were a foreseeable consequence of defendant's alleged violations of ORS § 746.230. Resp. at 22. Because there is a dispute as to foreseeability, this issue is not appropriate for resolution at the summary judgment stage.

        3. *Policy Exclusions*

Finally, defendant maintains that the terms of the Policy prohibit recovery for indirect and consequential damages such as those sought by plaintiff. *Id.* at 21. The Policy contains an exclusion provision stating that it will not apply to "indirect or consequential loss of any nature including fines, penalties, multiple or punitive damages." Policy 14. The Policy also excludes, in relevant part, losses resulting directly or indirectly from "any fraudulent, dishonest or criminal act committed by any Employee or Fiduciary whether acting alone or in collusion with others, unless covered under Insuring Agreements A.1. [Employee Theft or Forgery], A.2. [ERISA Fidelity], A.3. [Employee Theft of Client Property], F.2. [Computer Program and Electronic Data Restoration Expense], or H [Personal Accounts Protection]." *Id.* (bolding omitted). Defendant argues that the damages fall under sections outside of those listed. MSJ 23. Plaintiff argues that the types of damages covered under the Policy should not limit extracontractual tort

claims based on violations of ORS 746.230. Pl. Resp. 22. In other words, the contractual agreement is not a waiver of tort claims.

"Oregon law establishes that 'a presumption will be indulged against an intention to contract for immunity from the consequence of one's own negligence.'" *Certain Underwriters at Lloyd's London v. TNA NA Mfg., Inc.*, 372 Or. 64, 66, 545 P.3d 736, 738 (2024) (en banc) (quoting *Waterway Terminals v. P.S. Lord*, 242 Or. 1, 19, 406 P.2d 556 (1965) (en banc)). This is because it is good public policy to deter negligent conduct. *Id.* at 72 (citation omitted). That presumption cannot be overcome unless the intention to contract for tort immunity "'is clearly and unequivocally expressed.'" *Id.* at 66 (quoting *Estey v. MacKenzie Eng'g Inc.*, 324 Or. 372, 376, 927 P.2d 86 (1996)). Courts consider the language of the contract as well as "'the possibility of a harsh or inequitable result'" from immunizing a party from tort. *Id.* at 73 (quoting *Estey*, 324 Or. at 281).

In *Certain Underwriters at Lloyd's London*, the plaintiff insured a food company that suffered damages after issuing a recall due to listeria contamination. *Id.* at 68-69. The plaintiff, as subrogee, sued the manufacturer of the equipment that had been used to prepare the food, alleging tort claims for negligence and strict products liability. *Id.* at 69. The defendant argued that the purchase contract for the equipment barred tort action because it included four warranties that read as follows:

> "Seller warrants to the original Customer that the equipment is free from manufacturing defects. Seller agrees to repair or replace, F.O.B. any part of standard commercial manufactured items which are, within the warranty period of the manufacturer's item in question, found defective or otherwise unsatisfactory owing to faulty material or workmanship. The warranty shall not apply to any product which has been damaged by improper usage, accident, neglect, alteration or abuse. The liability of the manufacturer is limited solely to replacing the defective product. In no event shall the manufacturer be liable for special or consequential damages to any Purchaser, user or other person.
> . . .
> "Purchaser agrees to defend and indemnify Seller against any loss, cost, damage or expense (including reasonable attorney's fees) resulting from any claims by Purchasers or by third parties (including Purchaser's employees) of damage to property or injury to persons resulting from faulty installation or negligent operation of the equipment.
> . . .
> "There are no warranties, express or implied, including the warranty of merchantability and the warranty of fitness for a particular purpose extending beyond those set forth in [s]ection 5. Seller's liability shall be limited to the repair or replacement of any defective equipment and the parties agree that this shall be Purchaser's sole and exclusive remedy. Seller shall not be liable, in any event, for loss of profits, incidental or consequential

> damages or failure of the equipment to comply with any federal, state or local laws.  Seller shall under no circumstances be liable for the cost of labor, raw materials used or lost in testing or experimental or production operations of any equipment sold, whether such testing, production or experimentation is done under the supervision of a representative of the Seller or of any employee or other representative of the Purchaser.
> . . .
> "In the event of default by either party, all rights and remedies shall be governed by the law of the State of Oregon and venue for any litigation shall be laid in the Circuit Court of Oregon for the County of Clackamas.
>
> "Seller shall further not be liable for any consequential damages."

*Id.* at 68 (internal quotation marks omitted).  The court concluded that none of the above language waived tort liability.  *Id.* at 73-80.  It noted that special and consequential damages, which are specifically called out in these provisions, are generally associated with contract claims, rather than tort claims.  *Id.* at 73.  Even though the warranty section used the phrase "in any event" and "broad language as to the types of damages disclaimed," nothing in its language "plainly, directly, and unequivocally speaks to liability outside of that arising under contract." *Id.* at 75 (internal quotation marks and citation omitted).  The court also could not find any "permissible inference" of tort liability.  *Id.*

The damages that plaintiff alleges are extracontractual tort damages, so there is a presumption against the Policy waiving liability for negligence unless that waiver is clearly and unequivocally expressed in the language of the Policy.  The Policy prohibits recovery for "indirect or consequential loss of any nature," which, as the Oregon Supreme Court explained, are generally associated with contract claims.  Policy 18.  "Of any nature" is similar in scope and intent as "in any event," which, as noted, the Oregon Supreme Court has determined is not a clear and unequivocal waiver of tort liability.  Nothing in the language of the Policy explicitly and unambiguously waives tort liability.  Where there is no clear, explicit, and unequivocal waiver, "[a]rguments that seek to infer such an express waiver through inference or implication are unlikely to succeed." *Id.* at 77.  The language of the Policy does not support such an inference.  A party to the contract might reasonably assume that the exclusion only applies to recovery under the Policy, and not under a tort theory.  Accordingly, the exclusion of indirect and consequential damages in the Policy does not waive liability for tort claims.

Defendant also makes a passing reference in its motion to plaintiff's claims being

13

extinguished by the dismissal of plaintiff's breach of contract claim but does not elaborate on this argument. MSJ 24. Plaintiff again responds that a breach of contract claim does not exclude a tort claim. Resp. 25-26. Defendant clarifies in its reply that it believes the claim is extinguished because plaintiff's negligence *per se* claim is untimely given the Policy's two-year limit on legal actions. Reply 13. Defendant also raises for the first time on reply that it believes the negligence *per se* claim is barred by Oregon's two-year statute of limitations for tort claims, ORS § 12.110(1), because the First Amended Complaint with that claim was not filed until June 28, 2022. *Id.*

As previously discussed, the Policy does not waive tort liability, and plaintiff's claim is a tort claim in negligence. As such, the terms of the Policy, which govern that contract, should not control when a tort claim can be filed. Although the Court need not address an argument that is first raised on reply, it notes that defendant denied coverage for plaintiff's claim on June 21, 2021. As the negligence *per se* claim is a tort claim based on an alleged negligent investigation and delay in issuing a decision, it is reasonable to consider that date to be the date of injury for purposes of the statute of limitations. Accordingly, neither the Policy's time limit provision nor the applicable Oregon statute of limitations bar this action.

## CONCLUSION

For the foregoing reasons, defendant Navigators Insurance Company's Motion for Summary Judgment, ECF [43], is DENIED.

IT IS SO ORDERED.

DATED this 31st day of March, 2025.

Adrienne Nelson
United States District Judge

14